**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

------------------------------------------------------------- x

ELENA TITOVA,                                          :
                                                      :
            Plaintiff,                                :
                                                      :         Case No. _____
      - against -                                     :
                                                      :
ANTONY J. BLINKEN                                     :         **COMPLAINT FOR**
      in his official capacity as                     :         **DECLARATORY AND**
      Secretary of the United States                  :         **INJUNCTIVE RELIEF**
      Department of State                              :
      2201 C St., NW                                  :
      Washington, D.C. 20520                          :
                                                      :
THE UNITED STATES                                     :
DEPARTMENT OF STATE                                   :
      2201 C St., NW                                  :
      Washington, D.C. 20520                          :
                                                      :
JIM MULLINAX,                                         :
      in his official capacity as                     :
      Director of the                                 :
      United States Department of State               :
      Bureau of Economic and Business Affairs         :
      Office of Economic Sanctions Policy             :
      & Implementation                                :
      2201 C St., NW                                  :
      Suite 4657                                      :
      Washington, D.C. 20520                          :
                                                      :
THE UNITED STATES DEPARTMENT OF                       :
STATE, OFFICE OF ECONOMIC                             :
SANCTIONS POLICY AND                                  :
IMPLEMENTATION                                        :
      2201 C St., NW                                  :
      Suite 4657                                      :
      Washington, D.C. 20520                          :
                                                      :

1

JANET YELLEN,                                           :
     in her official capacity as                   :
     Secretary of the United States                :
     Department of the Treasury                    :
     1500 Pennsylvania Ave., NW                    :
     Washington, D.C. 20220                        :
                                           :
THE UNITED STATES DEPARTMENT OF                         :
THE TREASURY,                                           :
     1500 Pennsylvania Ave., NW                    :
     Washington, D.C. 20220                        :
                                           :
ANDREA M. GACKI,                                        :
     in her official capacity as                   :
     Director of the                               :
     United States Department of the Treasury       :
     Office of Foreign Assets Control               :
     1500 Pennsylvania Ave., NW-Annex               :
     Washington, D.C. 20220                        :
                                           :
     and                                           :
                                           :
THE UNITED STATES DEPARTMENT                            :
OF THE TREASURY, OFFICE OF FOREIGN                      :
ASSETS CONTROL,                                         :
     1500 Pennsylvania Ave., NW-Annex               :
     Washington, D.C. 20220                        :
                                           :
          Defendants.                         :
-------------------------------------------------------- x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Elena Titova (herein referred to as "Plaintiff") brings this Complaint for

Declaratory and Injunctive Relief against Defendants the United States Department of State

(the "State Department"), its Secretary, Antony J. Blinken, the United States Department of

State's Office of Economic Sanctions Policy & Implementation, and Jim Mullinax, its

Director of the Office of Economic Sanctions Policy & Implementation, United States

Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the

Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Andrea Gacki (collectively, the "Defendants") and in support of her complaint alleges:

## INTRODUCTION

1.      This lawsuit arises from the Defendants' unlawful designation of Plaintiff as a Specially Designated National ("SDN"), and Defendants' continued and unlawful failure to adjudicate Plaintiff's request to rescind her designation as an SDN and remove her name from the List of Specially Designated Nationals and Blocked Persons (the "SDN List").

2.      In this Complaint, Plaintiff asserts four claims.  First, Executive Order ("E.O.") 14024 of April 15, 2021 exceeded the powers delegated to the President by Congress and impermissibly authorized the designation of individuals based on prior lawful conduct and whose designation does nothing to deal with an ongoing national security crisis. Second, OFAC has impermissibly and illegally delegated its authority to adjudicate delisting petitions to the State Department, which has no authority to adjudicate them, nor any process by which they are evaluated.  Third, the Defendants are acting arbitrarily and capriciously by treating Plaintiff differently than similarly situated petitioners under the same administrative process and unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List.  Lastly, there is no factual basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

3.      In response to Russia's aggression against Ukraine, President Joseph R. Biden declared a national security emergency and invoked the powers delegated to the President by Congress in the International Emergency Economic Powers Act ("IEEPA") to impose sweeping sanctions on Russian individuals and entities.  The stated purpose of these sanctions was to put economic pressure on Russia to withdraw its forces from Ukraine.

However, in so doing, the executive order used to accomplish these ends exceeded the President's authority insofar as they included provisions allowing the imposition of sanctions for prior lawful conduct that had ceased and had no effect on the ongoing national security crisis. In fact, the imposition of sanctions on Russian individuals for prior lawful conduct undermines U.S. foreign policy by discouraging the very change in behavior that the sanctions are intended to achieve.

4.     Ms. Elena Titova, a dual citizen of Russian and the United Kingdom, was one of the individuals who was sanctioned because she was, at one time, an independent board member of PJSC Bank Otkritie Financial Corporation ("Bank Otkritie"), a Russian state-owned bank that was itself designated on February 24, 2022. Just eight days after Russia's invasion of Ukraine, Ms. Titova resigned from her position at the bank. Her resignation was accepted and confirmed by the bank on March 5, 2022.

5.     Nevertheless, 46 days *after* Plaintiff's resignation, which has been reported in various media outlets in Russia, Defendants designated her as an SDN. Despite historic cooperation with U.S. allies, which includes reciprocal sanctions, no other nation in the world has sanctioned Ms. Titova. Notably, this includes Ukraine itself, which has sanctioned thousands of Russian nationals and entities, but not Ms. Titova.

6.     Plaintiff's designation violated the statutory and constitutional limits on the Executive Branch's power because it has had and will have absolutely no effect on the national security crisis. Ms. Titova, a career professional in the banking industry, has spent the majority of her career working with prominent American financial institutions, including over 17 years with Goldman Sachs and Morgan Stanley. She has no ties to or sway with the Russian government and is neither a U.S. adversary nor a national security or foreign policy

risk.  Her designation does nothing to affect U.S. foreign policy or deal with the ongoing national security crisis and accomplishes nothing beyond making her collateral damage in the conflict.  Plaintiff's designation thus exceeds the power granted by Congress to the Executive to impose sanctions insofar as it exceeds the limitation that sanctioning activity "deals with" the ongoing national security crisis.

7.     Further, her continued designation would be contrary to OFAC's stated policy of imposing sanctions "not to punish, but to bring about a positive change in behavior."  If Plaintiff cannot be removed from the SDN List based on her resignation from Bank Otkritie, then there is effectively nothing she can do to end her status as a sanctioned individual because she has already terminated the sole basis for her designation.  Moreover, keeping Plaintiff and others similarly situated on the SDN List sends a message that the U.S. assigns no value to course correction.

8.     Even assuming that Defendants' designation of Plaintiff is constitutional, Defendants have unreasonably failed to adjudicate her delisting application.  Defendants must afford Plaintiff due process and equal protection under the law.  When the Defendants designated Plaintiff, certain legal protections attached to Defendants' actions under the Administrative Procedure Act ("APA") and the U.S. Constitution.  Defendants may not act arbitrarily and capriciously through the adjudication process or otherwise act in a manner contrary to the law.  Defendants may not deprive those affected by their actions of due process and equal protection, including a meaningful opportunity to respond to government action and equal treatment to those similarly situated.  In unnecessarily delaying adjudication of her delisting petition, Defendants have deprived Plaintiff of her rights to equal protection and due process under the U.S. Constitution.

9.    Furthermore, it has been more than a year since Plaintiff applied for reconsideration, and in that time, at least three other similarly situated petitioners -- JSC SB Alfa-Bank Kazakhstan ("Alfa-Bank Kazakhstan"), Active Business Consult GmbH, and Anatoly Karachinskiy, Plaintiff's fellow former Bank Otkritie board member – had their petitions adjudicated and were removed from the SDN List.  Limited Liability Company Ozon Bank ("Ozon Bank") filed a similar petition before Plaintiff did and received adjudication and removal from the SDN List in 35 days.  Those parties were all designated under E.O. 14024, just as Plaintiff, and likewise petitioned for reconsideration based on the fact that the underlying basis for designation had terminated prior to the actual designation.

10.    Nevertheless, Defendants have failed to adjudicate Plaintiff's petition for reconsideration despite the fact that Plaintiff has conclusively demonstrated with documentary evidence that she resigned from Bank Otkritie 46 days before she was designated.

11.    Under the binding precedents of this Court, Defendants are required to treat similarly situated parties similarly pursuant to the same administrative process.  Defendants must then adjudicate Plaintiff's matter in a similar manner as those other petitioners or, at a minimum, provide some explanation as to why Plaintiff has been treated differently.

12.    To date, Defendants have provided no substantive response to Plaintiff's numerous requests for timely adjudication, despite Plaintiff's full cooperation, including prompt responses to Defendants' requests for information.  Instead, Defendants have issued questionnaire after questionnaire, increasingly asking Plaintiff for information that is both irrelevant and unnecessary in a transparent attempt to either delay making any decision on her application or fish for information that may warrant designation on other grounds.

13.     The extraordinary delay in adjudicating Plaintiff's petition for reconsideration stands in stark contrast to the simplicity of the question before them.  Plaintiff petitioned for reconsideration on May 10, 2022.  In her petition, she included copies of her resignation letter (dated March 4, 2022) and the bank's confirmation of her resignation (dated March 5, 2022), along with citations to news articles that reported her resignation.  It has now been over a year since Plaintiff submitted her petition for reconsideration which presented Defendants with conclusive evidence that Plaintiff resigned from the supervisory board of Bank Otkritie 46 days prior to her designation, thus refuting the sole basis for her designation.  There is an irrefutable record that Plaintiff no longer serves in *any* capacity for Bank Otkritie, thus refuting the predicate basis for her designation.  Nevertheless, Defendants have failed to adjudicate her petition for removal.

14.     Defendants' failure to adjudicate Plaintiff's petition – which, in effect, amounts to a decision to deny the petition – has caused, and continues to cause, Plaintiff significant personal and financial harm.  As a result of Defendants' arbitrary and capricious actions, foreign financial institutions have blocked Plaintiff's accounts, she is unable to find employment with any unsanctioned institution or company, has experienced severe difficulty in paying for her living expenses, is prevented from participating in any meaningful economic activity even in her home country, and her reputation has been stained.  Plaintiff will continue to suffer those harms so long as Defendants' unreasonable delay in adjudicating Plaintiff's delisting petition is allowed to continue.  Accordingly, Plaintiff brings this action to remedy the wrongs that Defendants have visited upon her.

## JURISDICTION AND VENUE

15.     This action arises under the U.S. Constitution, the International Emergency

Economic Powers Act, 50 U.S.C. § 1701 et seq., and the Administrative Procedure Act, 5

U.S.C. §§ 555 and 701 et seq.  This Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

16.     This Court may grant declaratory relief pursuant to the Declaratory Judgment

Act, 28 U.S.C. § 2201 et seq., and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive

relief pursuant to Fed. R. Civ. P. Rule 65.

17.     Venue is proper in the District of Columbia as this is the district in which the

events giving rise to the Complaint occurred and in which Defendants reside.  See 28 U.S.C.

§§ 1391(b) and (e).

## THE PARTIES

18.     Ms. Titova, a dual citizen of Russia and the United Kingdom, is a veteran of

the financial sector, holding a Master of Management (now titled MBA) from Northwestern

University in Illinois and having over 25 years of professional experience at financial

institutions not only in Russia, but also in the United States and the United Kingdom,

including at prominent multinational institutions such as Goldman Sachs, Morgan Stanley,

and UBS.  At these financial institutions, she was a Managing Director and held senior

management positions.  In those positions, her responsibilities included enhancing

transparency and adopting international best practices with respect to the corporate sector

and capital markets in the Russian Federation.  In December 2017, she was voted in as an

independent member of the Board of Bank Otkritie, assuming her duties in January 2018.

The independent directors were invited to this Board to help prepare the bank for an intended

disposal through an IPO or sale to a strategic buyer.  Ms. Titova's previous career experience was directly relevant for this task.

19.     On March 4, 2022, just eight days after Russia invaded Ukraine, Ms. Titova submitted her letter of resignation from the Bank Otkritie board, which became effective the next day.  On April 20, 2022, OFAC named Ms. Titova to the SDN List pursuant to E.O. 14024 for her role as a member of Bank Otkritie's board, despite her resignation from it over six weeks earlier.

20.     Defendant, the U.S. Department of State, is a cabinet-level governmental department, led by the Secretary of State, that manages the United States' relationships with foreign governments, international organizations, and the people of other countries.  It is located at 2201 C St., NW, Washington, D.C. 20520.

21.     Defendant Antony Blinken is the Secretary of the U.S. Department of State. Mr. Blinken is sued in his official capacity.

22.     Defendant, the Bureau of Economic and Business Affairs, Office of Economic Sanctions Policy & Implementation, is a federal agency that is part of the U.S. Department of State.  It is located at 2201 C St., NW, Suite #4657, Washington, D.C. 20520.

23.     Defendant Jim Mullinax is the Director of the Office of Economic Sanctions Policy & Implementation.  In this role, Mr. Mullinax is responsible for overseeing and directing the operations of the Office of Economic Sanctions Policy & Implementation, which has no lawful authority to adjudicate this matter and is unreasonably delaying adjudication of Plaintiff's delisting petition.  Mr. Mullinax is sued in his official capacity.

24.     Defendant, the U.S. Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury.  In addition to its core

objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States.  It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

25.     Defendant Janet Yellen is the Secretary of the Treasury of the United States. Ms. Yellin is sued in her official capacity.

26.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW-Annex, Washington D.C. 20220. OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities.  Further, under 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively, it is the sole administrative agency responsible for the reconsideration and delisting process.

27.     Defendant Andrea M. Gacki is the Director of OFAC.  Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

**Plaintiff's History and Background**

28.     Born in Moscow to a Russian-Ukrainian family, Ms. Titova is a dual citizen of Russia and the United Kingdom, having more recently lived in Russia and the United Arab Emirates (U.A.E.).  Ms. Titova holds a B.A. in Economics from Moscow State Lomonosov University and, in 1990, she came to the United States for the first time to join her husband, who was, at the time, an exchange student in Wisconsin.  Ms. Titova took on employment at various jobs in order to save money to attend school in the United States.  Eventually, in

1994, she earned a Masters in Management (now referred to as an MBA) from Northwestern University's Kellogg Business School in Evanston, Illinois.

29.     After she graduated from Northwestern in 1994, Ms. Titova obtained a position at Goldman Sachs in New York and moved to London a year later for the same company.  She then returned to Moscow in 2003, continuing to work for Goldman Sachs. Ms. Titova subsequently worked for over six years for Morgan Stanley, and later UBS for roughly four years, heading these banks' respective businesses in Russia and Commonwealth of Independent States ("CIS").  More recently, she has worked as an independent director for several Russian institutions, including Bank Otkritie, on whose Board of Directors she served from 2018 until March 5, 2022.  She has since resigned from all professional posts and is not employed anywhere.

**The Origins of IEEPA and the Executive's Constitutional and Statutory Authority**

30.     IEEPA specifies its general policy and purpose – to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President of the United States declares a national emergency with respect to such threat.  50 U.S.C. § 1701(a).  The President's authority is restricted in that it may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared.  50 U.S.C. § 1701(b).  The means and scope of the President's authority is further specified in 50 U.S.C. § 1702, and additional limitations are set forth in 50 U.S.C. § 1703.

31.     Despite numerous challenges to IEEPA on the grounds that the statute unconstitutionally delegated powers to the Executive Branch, courts around the country have

rejected such arguments, finding that Congress's delegation of authority was proper because the IEEPA limits the President's power and imposes procedural limitations that meaningfully constrain the President's discretion to define criminal conduct. One of the ways that courts have found that IEEPA meaningfully limits the President's authority is by clearly setting out the policy behind delegating power to the President, namely, to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States." 50 U.S.C. § 1701(a). Simply put, the President does not have the power to sanction any person or entity whom he or she chooses; rather, the President may only sanction an individual or entity if doing so addresses – that is, "deals with" – a national security emergency.

32. The limitation that the President may not sanction a person or entity unless such action addresses a national security emergency underscores the prospective nature of the power to sanction. OFAC, the federal agency tasked with administering the U.S. sanctions regimes, has provided guidance stating that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." See https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list. The guidance also offers examples of situations in which a delisting might be warranted, including "a positive change in behavior…" or when "the basis of designation no longer exists…" Id. OFAC's own regulations further allow SDNs to "assert that the circumstances resulting in the designation no longer apply, and to…propose remedial measures…which the person believes would negate the basis for designation." 31 C.F.R. § 501.807.

33.     The rules governing the delisting process identify OFAC as the sole administrative body that adjudicates such petitions.  As stated in 31 C.F.R. § 501.807, "[a] person may seek administrative reconsideration of his, her or its designation … [t]his submission must be made in writing and addressed to the Director, Office of Foreign Assets Control."  Thus, the entire authority to adjudicate a delisting petition rests with OFAC, and there is no mechanism for OFAC to delegate its entire function in this regard to any other federal agency, including the State Department.

34.     Notably, and as previously described, none of those procedures involve the U.S. Department of State.  See 31 C.F.R. § 501.807, Procedures Governing Delisting from the Specially Designated Nationals and Blocked Persons List.  Neither E.O. 14024 nor the underlying regulations at 31 C.F.R. Parts 501 and 587 provide the State Department with any legal authority to adjudicate a petition for reconsideration of a designation action.  Further, the State Department has not promulgated any regulations regarding the adjudication of administrative petitions for reconsideration.

35.     Although the State Department has the authority to designate individuals and entities pursuant to E.O. 14024 at Section 1(a), neither E.O. 14024 nor the underlying regulations confer upon the State Department any authority with respect to the administration of those sanctions, including but not limited to license applications or delisting petitions. E.O. 14024 states that "[t]he Secretary of the Treasury, in consultation with the Secretary of State is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order [E.O. 14024]."  E.O. 14024 at Section 8. This means that the State Department's role is limited to consultation and does not extend to

13

an administrative or adjudicative role. Further, E.O. 14024 states that "[t]he Secretary of the Treasury may, consistent with applicable law, redelegate any of the functions within the Department of the Treasury." E.O. 14024 at Section 8. As a result, there is no legal mechanism for OFAC to delegate its administrative and adjudicative role to the State Department, and the State Department has no legal authority to adjudicate Plaintiff's petition for reconsideration.

36.     Even though the State Department maintains no regulatory framework for considering the delisting of sanctioned individuals and entities, it, too, follows the same principle, stating on its website that "The Office of Economic Sanctions Policy and Implementation … maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests. We also work to remove economic sanctions when appropriate to reward and incentivize behavior[.]" See https://www.state.gov/economic-sanctions-policy-and-implementation/.

37.     In essence, under IEEPA, the thrust of U.S. sanctions imposed by the Executive are prospective in nature – they are targeted at ongoing conduct to affect behavior and bring the national security crisis to an end. In other words, they "deal with" the national security crisis. OFAC's actions have abided by the principle that the purpose of imposing sanctions is not to punish past behavior but to cause a change in behavior.

**The Russian Invasion of Ukraine and the Resulting Sweeping Sanctions**

38.     On February 24, 2022, Russia illegally invaded Ukraine. In response, the United States and its allies swiftly imposed sanctions on Russian individuals and entities. The stated purpose of these sanctions was to bring about the withdrawal of Russian troops from Ukraine.

39.     The OFAC Press Release on February 24, 2022 stated, "The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) today imposed expansive economic measures… that target the core infrastructure of the Russian financial system – including all of Russia's largest financial institutions and the ability of state-owned and private enterprises to raise capital – and further bars Russia from the global financial system."  With respect to Bank Otkritie's designation, the OFAC press release stated, "Public Joint Stock Company Bank Financial Corporation Otkritie (Otkritie) is deemed by the [Government of Russia] to be a systemically important Russian state-owned credit institution and is Russia's seventh largest financial institution. Otkritie was designated pursuant to E.O. 14024 for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, the [Government of Russia], and for operating or having operated in the financial services sector of the Russian Federation economy."

40.     On April 20, 2022, Plaintiff was designated for being or having been a leader, official, senior executive officer, or member of a board of directors, or member of an entity whose property and interest in property are blocked under E.O. 14024.  Based on the factual allegations in the government's press release, Section 1(a)(iii)(C) was specifically cited as providing legal authority for its action.  In the press release, Secretary Blinken stated, "We will continue to target those who take part in or facilitate sanctions evasion for sanctioned Russian entities, as they are complicit in President Putin's brutal war."  Therefore, the logic of sanctioning board members of financial institutions was to punish their ongoing involvement in the activities of sanctioned financial institutions.  Secretary Blinken said nothing about former board members who were no longer associated with such financial institutions.

15

41.     Where the sole basis for designation is acting as a board member of a sanctioned entity, there is no logic or reason in designating that individual if he or she has already resigned from the position, nor does the designation deal with, or impact in any way, the ongoing national security crisis.  Even the designations under E.O. 14024 reflect this underlying principle.  Indeed, Bank Otkritie's board members who retired in December 2021 or earlier were not among the individuals that were sanctioned on April 20, 2022 for being board members of Bank Otkritie.  By contrast, each of the individuals listed along with Plaintiff in the April 20, 2022 designations were the board members of Bank Otkritie in the bank's most recent public disclosure and the active board at the time of Russia's invasion of Ukraine.  Accordingly, the State Department and OFAC's own actions evidenced an intent to sanction current board members, not former ones.

**Plaintiff's Challenge to Her Designation**

42.     On May 10, 2022, Plaintiff, through counsel submitted a petition for reconsideration through counsel to OFAC because OFAC is the sole agency identified in the "Procedures governing delisting from the Specially Designated Nationals and Blocked Persons List" at 31 C.F.R. § 501.807 to consider and adjudicate delisting petitions. Plaintiff's petition was emailed to both Defendant Gacki and the general email address for reconsideration of OFAC's actions.

43.     In her petition, Plaintiff included a certified copy of her resignation letter, dated March 4, 2022, as well as a certified copy of Bank Otkritie's acceptance of her resignation, dated March 5, 2022.  Plaintiff also included third-party confirmations, cites to public sources confirming her resignation from the Bank Otkritie board.

16

44.     Plaintiff received acknowledgment of her petition from OFAC the following day, May 11, 2022.  OFAC indicated in later correspondence to counsel that it opened petition file RUSSIA-EO14024-26875.

45.     On May 16, 2022, Plaintiff's counsel received a response from the State Department, which stated, "This letter acknowledges receipt of your correspondence dated May 10, 2022 to the Office of Foreign Assets Control (OFAC), requesting reconsideration of your client's designation as a Specially Designated National (SDN) pursuant to Executive Order 14024. This designation was done under a Department of State authority. Sanctions_inbox@state.gov will serve as the point of contact for the petitioner during the reconsideration process.  Your request is under review.  However, the review process can be lengthy, and it is likely that State will seek additional information from your client before a final determination is made concerning your client's designation as an SDN.  […] For the most expedient communications, please direct all questions and correspondence regarding your request to Sanctions_inbox@state.gov."

46.     On July 15, 2022, more than two months after Plaintiff's original petition, the State Department issued a questionnaire ("First Questionnaire") in furtherance of Plaintiff's petition.  Almost all the questions contained in the First Questionnaire were related to Plaintiff's activities at Bank Otkritie and any continuing financial relationship with it, including compensation.  On July 26, 2022, Plaintiff, through counsel, responded to the First Questionnaire, which highlighted that Plaintiff had no continuing economic ties to Bank Otkritie.

47.     On September 30, 2022, having received no further communications from either OFAC or the State Department, Plaintiff's counsel emailed to follow up on Plaintiff's

petition.  On October 3, 2022, the State Department responded, stating "The U.S. Department of State has received your correspondence dated September 30, 2022, regarding your client's petition.  We do not have any updates to provide at this time but will make every effort to reply within our standard response timeframe."

48.     On October 25, 2022, Plaintiff's counsel emailed the State Department, copying OFAC, asking for an update.  On October 31, 2022, the State Department responded that "While we appreciate your client's desire to have her petition considered in an expedited fashion, each case is unique and requires careful, often lengthy, review by stakeholders in the Department.  While we regret that we cannot provide an estimate for the completion of our review, please be assured that we continue to actively consider your client's petition and will let you know when we have further questions or when we complete our adjudication."

49.     On February 28, 2023, the State Department issued another questionnaire ("Second Questionnaire") requesting further information from Plaintiff.  Unlike the First Questionnaire, the Second Questionnaire requested some information that had no relevance to Plaintiff's petition for reconsideration, including an accounting of Plaintiff's holdings in a Luxembourg company that acted as a holding company for personal assets and an accounting of Plaintiff's financial relationships in the country she was living in at the time.  Further, the Second Questionnaire included a number of questions that could have easily been asked in the First Questionnaire, including Petitioner's financial ties to other SDNs and what her responsibilities were as a board member at Bank Otkritie.  The Second Questionnaire also asked why Plaintiff took a position at Bank Otkritie after Russia's invasion of Crimea, ignoring the fact that even OFAC had not sought to sanction Bank Otkritie after the Crimea invasion.  In essence, the State Department was asking why Plaintiff had not drawn a link

18

between the bank and Vladimir Putin's aggression towards Ukraine that the United States itself had not drawn, especially as it had not sanctioned the bank before February 24, 2022, and as significant U.S. financial institutions themselves had expressed open interest and actively were engaged in dealing with Bank Otkritie during the period immediately preceding the invasion.  Nevertheless, Plaintiff responded to each question in submissions dated March 22, 2023 and March 29, 2023.

50.     On May 19, 2023, OFAC delisted Anatoly Karachinskiy, who had been Plaintiff's fellow board member at Bank Otkritie and had been designated on the same day and for the same reason as Plaintiff.  Neither OFAC nor the State Department offered any explanation for his delisting.  Notably, however, on December 12, 2022, Mr. Karachinskiy filed a Complaint against OFAC and the State Department in this court requesting declaratory and injunctive relief on the grounds that (a) the State Department had no statutory authority to administer sanctions or to consider reconsideration petitions, (b) that OFAC and the State Department had unduly delayed in adjudicating his petition, and (c) there was no basis for his designation.  After several extensions for the government's response, the parties entered into a stipulation that, among other things, required Defendants to adjudicate his petition by May 22, 2022.

51.     On the same day that Mr. Karachinskiy was delisted, counsel for Plaintiff wrote to OFAC and the State Department requesting a meeting to discuss her petition and noting that she was similarly situated to Mr. Karachinskiy insofar as both were designated for the same reason and both had resigned shortly after the Russian invasion of Ukraine and before they had been designated.  Less than fifteen minutes after counsel sent this email, the State Department responded with a third questionnaire ("Third Questionnaire").  The Third

Questionnaire contained questions that could have easily been asked in prior questionnaires, and the only question that followed up on previously disclosed information was to "Please provide the rationale for keeping active accounts with designated entities," an absurd request, given that, as a designated individual, Plaintiff had effectively been locked out of the world economy, as well as non-designated Russian entities, because of her designation, and is not subject to the same sanctions that prevent U.S. persons from maintaining accounts at such institutions.

52.     Throughout these communications with the State Department, OFAC was consistently copied on the correspondence.  Yet, at no time did any member of OFAC, the agency statutorily responsible for adjudicating petitions for delisting, assert any opinion or authority, remaining silent throughout the entire process.

53.     The questions in the Second and Third Questionnaires did not bear on the underlying basis of Plaintiff's designation.  Rather, it appears that the State Department was using the administrative reconsideration process to inappropriately delay adjudication of Plaintiff's petition or engage in a fishing expedition to find some reason to keep Plaintiff on the SDN List.  Neither purpose is appropriate under the law and both amount to a violation of due process and equal protection.  At a minimum, both OFAC and the State Department have violated Plaintiff's good faith attempt to cooperate and be transparent with U.S. government officials.

54.     Plaintiff has now been designated for over 400 days.  Similarly situated petitioners have received adjudication and removal from the SDN List in as little as 35 days, despite the fact that, under binding case law in this Circuit, agencies must treat similarly situated parties similarly, unless they can provide a legitimate reason as to why they are

being treated differently.  Kreis v. Sec'y of Air Force, 406 F.3d 684, 687 (D.C. Cir. 2005)

(quoting Indep. Petroleum Ass'n of Am. v. Babbitt, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).

55.     There is nothing further that Plaintiff can do to demonstrate "improved

behavior" when the basis of her sanctions designation is no longer operative, and in fact,

ceased 46 days prior to her designation.  Plaintiff has done everything that Defendants have

requested, including promptly answering follow-up questionnaires that frequently demand

information that is irrelevant and inconsequential to the underlying basis for designation.

And now, in the face of further questionnaires, each seemingly issued in an attempt to delay

the process or find some other basis for designation, Plaintiff has no other recourse than to

request this Court for declaratory and injunctive relief to address Defendants'

unconstitutional and unlawful designation, as well as to prompt agency action to remedy the

"pocket veto" that Defendants have employed in delaying adjudication of Plaintiff's petition

to be removed from the SDN List.

## LEGAL CLAIMS

### COUNT I

### DEFENDANTS HAVE EXCEEDED THEIR STATUTORY AND CONSTITUTIONAL AUTHORITY

56.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

57.     IEEPA limits the President's authority to impose sanctions to actions that "deal

with" an ongoing national security crisis.  See 50 U.S.C. § 1701.  Any action under IEEPA

that cannot be shown to deal with the ongoing national security crisis is therefore outside the

President's scope of authority under the statute and is unconstitutional.

58.     The APA empowers a reviewing court to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).

59.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13).

60.     By designating Plaintiff based on conduct that ceased prior to such designation, Defendants have exceeded their constitutional and statutory authority because such action does nothing to deal with or affect the underlying national security crisis.  By engaging in such action, Defendants' designation of Plaintiff is based on a desire to punish her for prior conduct, and it has no nexus to addressing the ongoing national security crisis.

## COUNT II

**DEFENDANTS HAVE ARBITRARILY AND CAPRICIOUSLY
DELEGATED RESPONSIBILITY FOR ADJUDICATING
PLAINTIFF'S PETITION IN A MANNER THAT IS CONTRARY
TO LAW AND HAS RESULTED IN UNREASONABLE DELAY**

61.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

62.     The APA empowers a reviewing court to set aside agency action found to be, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).

63.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13).

64.     By attempting to adjudicate this matter, the State Department is arbitrarily assuming and OFAC is arbitrarily delegating authority that is, by statute, exclusively granted to the U.S. Department of the Treasury.  Defendants' unlawful actions have resulted in the continued deprivation of Plaintiff's rights for this matter to be adjudicated with due process by a governmental agency that has the lawful authority and competency to render a timely decision.

## COUNT III

### DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S DELISTING PETITION CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

65.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

66.     The APA requires agencies to "conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).

67.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).

68.     Under binding precedent in this Circuit, administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.  Plaintiff is aware of at least four other similarly situated petitioners who were designated pursuant to E.O. 14024 and petitioned for reconsideration

because the predicate basis for designation no longer applied.  Those four parties' petitions were adjudicated in less time than Plaintiff's, resulting in an impermissible material difference in how Plaintiff's petition is being considered under the same regulatory process found at 31 C.F.R. § 501.807 when compared to similarly situated petitioners. Defendants have failed to provide a legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law.

69.     Defendants' failure to render a decision on Plaintiff's delisting petition, despite having indisputable evidence in their possession that Plaintiff did not and does not meet the legal criteria for designation under E.O. 14024 constitutes unreasonable delay under the APA. Further, Defendants are treating Plaintiff differently than similarly situated parties by failing to adjudicate this matter in a timely manner.  Plaintiff will continue to suffer the consequences of her designation so long as Defendants continue to refuse to adjudicate Plaintiff's delisting petition and treat Plaintiff differently than similarly situated parties.

**COUNT IV**

**DEFENDANTS HAVE ACTED ARBITRARILY AND CAPRICIOUSLY IN FAILING TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S DELISTING PETITION DESPITE CONCLUSIVE EVIDENCE THAT PLAINTIFF DID NOT MEET THE CRITERIA FOR CONTINUED DESIGNATION UNDER E.O. 14024**

70.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

71.     Under the APA, agencies are required "to conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).

72.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 706(1) (emphasis added). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

73.     Defendants' failure to act on Plaintiff's delisting petition, despite having evidence in their possession that Plaintiff did not and does not meet the criteria for designation under E.O. 14024 constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA. Specifically, Defendants had or could have reasonably obtained information regarding Plaintiff's resignation prior to her designation.  Setting aside that Defendants should have known of Plaintiff's resignation, Plaintiff has since presented to Defendants information and documents conclusively demonstrating that she did not meet the criteria for designation under E.O. 14024 at the time of her designation.  Defendants have arbitrarily and capriciously failed to act on that information.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.      Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of her name from OFAC's SDN List;

B.      Order Defendants to issue a written decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why her petition has been treated differently than those of similarly situated petitioners;

C.      Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 et seq., and any other applicable provision of law; and

D.      Such other and further relief as the Court may deem proper.


Dated: June 15, 2023

Respectfully submitted,

/s/ Amir H. Toossi
Amir H. Toossi
Akrivis Law Group PLLC
747 Third Avenue, 32nd Floor
New York, NY 10022
Telephone: (646) 280-6370
Email: atoossi@akrivislaw.com
NY State Bar No. 4236071

Farhad Alavi
Akrivis Law Group PLLC
5335 Wisconsin Avenue, Suite 440
Washington, D.C. 20015
Telephone: (202) 730-1271
Email: falavi@akrivislaw.com
D.C. Bar No. 500560

*Counsel for Elena Titova*